IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIEN COOK, | ) | |
| | ) | |
| Plaintiff, | ) | 2:09-CV-02297-GEB-EFB |
| | ) | |
| v. | ) | ORDER DENYING DEFENDANTS' |
| | ) | MOTION FOR PARTIAL SUMMARY |
| J&J SNACK FOODS CORP., a New Jersey | ) | JUDGMENT[*] |
| corporation; WHITING'S FOODS | ) | |
| CONCESSIONS, INC., a California | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

On December 23, 2009, Defendants J & J Snack Foods Corp. ("J & J") and Whiting's Foods Concessions, Inc. ("Whiting's") filed a motion for partial summary judgment under Federal Rule of Civil Procedure 56(c) on Plaintiff's trademark infringement claim. Plaintiff's complaint alleges Defendants' use of the phrase "Mix It Up" in connection with the sale of frozen carbonated beverages infringes on Plaintiff's federally registered "Mix It Up!" service mark. Defendants argue they are entitled to partial summary judgment since Plaintiff's service mark is not protectable and, as a matter of law, there is no liklihood of confusion resulting from their use of Plaintiff's mark. For the reasons stated below, Defendants' motion for partial summary judgment is DENIED.

---

[*] This matter is deemed to be suitable for decision without oral argument. E.D. Cal. R. 230(g).

1


## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), the party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S., 317, 323 (1986). If the moving party satisfies this burden, the "non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009)(citation and emphasis omitted). When deciding a summary judgment motion, "all reasonable inferences are to be drawn in favor of the non-moving party." Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 630 (9th Cir. 2005). However, "[a] non-movant's bald assertions or mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." Stefanchik, 559 F.3d at 929. Further, only admissible evidence may be considered in deciding a summary judgment motion. See Fed. R. Civ. P. 56(e); Ballen v. City of Redmond, 466 F.3d 736, 745 (9th Cir. 2006)(stating that "[a] trial court may only consider admissible evidence in ruling on a motion for summary judgment"). "Although disfavored in trademark infringement cases, summary judgment may be entered when no genuine issue of material fact exists." Surfvivor, 406 F.3d at 630.

## II. BACKGROUND

Plaintiff Brien Cook is a sole proprietor of a business that rents machines for making frozen beverages at private parties. (Pl.'s Response to Defs.' Statement of Undisputed Facts ("SUF") ¶ 1.) Plaintiff's business also sells frozen beverage machines, services and repairs such machines, and sells MIX IT UP! branded beverages. (Cook Decl. ¶ 2.) Plaintiff has only rented machines within 60 miles of

1  Sacramento but sells his MIX IT UP! branded beverages nationally.
2  Plaintiff declares that his "customers make reservations for renting
3  machines via telephone and [through his] website, mixitup.biz." (Id.
4  ¶ 3.)
5       Plaintiff has been using the mark "MIX IT UP!" in his
6  business since October 1, 2004. (Pl.'s Response to Defs.' SUF ¶¶ 2-3;
7  Cook Decl. ¶ 2.) On February 7, 2006, Plaintiff applied to federally
8  register his "MIX IT UP!" mark with the United States Patent and
9  Trademark Office ("PTO")(Cook Decl. ¶ 5.) Registration on the
10 principal register issued for Plaintiff's service mark on July 21,
11 2009. (Id. ¶ 5, Ex. B.) The registration provides that "[t]he mark
12 consists of standard characters without claim to any particular font,
13 style, size or color." (Id.) The registration further states that
14 the service mark is used in connection with the "rental of machines
15 and apparatus for making both alcoholic and non-alcoholic iced fruit
16 beverages, for use at special events from house parties to galas and
17 the like . . . ." (Id.) Plaintiff declares that he "adopted the MIX
18 IT UP! mark to connote that having a frozen beverage machine at a
19 party is unique and different and thus 'mixes up' what would otherwise
20 be a routine event." (Id. at ¶ 4.) He further declares that he uses
21 the mark "in both a standard character format with no design elements
22 on [his] website and print advertising as well as a stylized version
23 which includes the words MIX IT UP in black with an orange exclamation
24 point and green swirl design underneath. [The] stylized mark also
25 appears on [Plaintiff's] machines and bottles for the frozen drink
26 machine beverages [he] sell[s]." (Id.)
27       Defendant J & J is a national and international
28 manufacturer, marketer and distributer of a variety of branded snack

1  foods and beverages for the food service and retail supermarket
2  industries.  (Pl.'s Response to Defs.' SUF ¶ 10.)  Through its
3  subsidiary, The ICEE Company, J & J sells carbonated frozen beverages
4  under its nationally prominent brands ICEE and SLUSH PUPPIE.  (Id. ¶
5  13.)  J & J sells ICEE and SLUSH PUPPIE drinks through various retail
6  outlets, including Target, Wal-Mart, at movie theaters, concession
7  counters, amusement parks and other pubic entertainment venues.  (Id.
8  ¶ 17.)

9         At some of these retail locations, various flavors of ICEE
10 or SLUSH PUPPIE branded drinks may be mixed in different combinations
11 by the consumer, "often as an interactive self-service experience."
12 (Id. ¶ 18.)  The ICEE Company employs the phrase "Mix It Up" as a
13 slogan with these "multi-flavor mixing stations."  (Id. ¶ 19.)  Dan
14 Fachner, the President of The ICEE Company, declares "[T]he Icee
15 Company commenced use of the . . . MIX IT UP slogan in April 2007.
16 The slogan is used . . . with the company's trademarks such as ICEE
17 MIX IT UP and SLUSH PUPPIE MIX IT UP.  The slogan[] tell[s] the
18 customer[] that they can mix up flavors to their individual tastes as
19 they operate the dispensers that pour the ICEE and SLUSH PUPPIE
20 products into their cups."  (Fachner Decl. ¶ 4.)

21         In or about December 2004, Plaintiff sought to meet with
22 representatives from The ICEE Company to explore mutual business
23 opportunities, including the marketing of ICEE branded products on
24 Plaintiff's website.  (Cook Decl. ¶ 6.)  On or about January 25, 2005,
25 Plaintiff met with two employees of The ICEE Company, Dave Springer
26 and Randy Fachner.  (Id.)  At this meeting, Plaintiff gave Springer
27 and Fachner copies of his marketing materials which featured his MIX
28 IT UP! mark.  (Id.)  Plaintiff declares that Springer and Fachner

4

1 expressed enthusiasm over his proposal to sell ICEE branded mixes
2 through his website. (Id.)  Dan Fachner, however, declares that
3 Plaintiff's proposal never came to the attention of The ICEE Company's
4 leadership.  (Fachner Decl. ¶ 6.)  Fachner further declares that The
5 ICEE Company's decision to use the phrase "Mix It Up" in connection
6 with multi-flavor mixing stations was developed by The ICEE Company's
7 marketing department and not from the meeting Plaintiff had with Randy
8 Fachner and Dave Springer.  (Id. ¶ 5.)  Defendants attach additional
9 declarations from Ken Whiting, Randy Fachner, Dave Springer, Dan
10 Fachner, Susan Woods and Karen Kline to their reply brief.  Most of
11 these declarations address The ICEE Company's decision to employ the
12 slogan "Mix It Up."  However, new evidence that is presented in a
13 reply brief need not be considered and is therefore disregarded.  See
14 Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996)(stating that
15 "where new evidence is presented in a reply to a motion for summary
16 judgment, the district court should not consider the new evidence
17 without giving the non-movant an opportunity to respond" (quotations
18 and citations omitted)).

19      On December 12, 2007, J & J filed a trademark application to
20 protect the use of the phrase "MIX IT UP" in connection with the sale
21 of frozen carbonated beverages.  (Fachner Decl. ¶ 7.)  However, on May
22 22, 2008, the PTO suspended J & J's trademark application based upon
23 Plaintiff's prior application to register "MIX IT UP!"  (Leonard Decl.
24 ¶ 4.)  The Notice of Suspension noted the PTO's conclusion that there
25 was a liklihood of confusion between J & J's application to register
26 its "MIX IT UP" mark and Plaintiff's prior application.  (Id. ¶ 3, Ex.
27 B.)
28

5

1    Defendant Whiting's is a concessionaire that sells SLUSH
2 PUPPIE products.  (Pl.'s Response to Defs.' SUF ¶ 29.)  Whiting's also
3 sells ICEE brand products through a "mixing kiosk," using the phrase
4 "MIX IT UP."  (Id. ¶ 29.)  On or about August 22, 2009, Plaintiff
5 attended the California State Fair in Sacramento, California and
6 visited a trailer operated by Whiting's.  (Cook Decl. ¶ 10.)
7 Plaintiff declares that the phrase "MIX IT UP" appeared on Whiting's
8 trailer and on cups and the self-service machines used by consumers to
9 dispense the frozen beverages.  (Id.)  Plaintiff also saw signs on
10 Whiting's trailer advertising a website, slushpuppiemixitup.com.  (Id.
11 ¶ 11.)
12    Plaintiff filed a complaint against J & J on August 19,
13 2009, and a first amended complaint, adding Whiting's as a defendant,
14 on August 31, 2009.  Plaintiff alleges Defendants' "use of the MIX IT
15 UP mark in connection with frozen carbonated beverage products . . .
16 constitutes trademark infringement pursuant to 15 U.S.C. § 1114 and is
17 likely to cause confusion among the relevant consuming public."
18 (First Amended Compl. ¶ 22.)  Defendants' answer includes a
19 counterclaim seeking to cancel Plaintiff's service mark under 15
20 U.S.C. § 1119.  None of the parties have conducted discovery as
21 initial disclosures under Federal Rule of Civil Procedure Rule 26 are
22 set to be exchanged on February 28, 2010.  (Leonard Decl. ¶ 4.)

### III.  DISCUSSION

24    Under the Lanham Act, "the holder of a protectable [service
25 mark] . . . [may] hold liable any person who, without consent, uses in
26 commerce any registered mark in connection with the sale, offering for
27 sale, distribution, or advertising of any goods or services."  KP
28 Permanent Make-Up Inc., v. Lasting Impression I, Inc., 408 F.3d 596,

6

1  602 (9th Cir. 2005)(citing 15 U.S.C. § 1114(1)(a)).  To prevail on his
2  claim of trademark infringement, Plaintiff must demonstrate that: (1)
3  "he has a valid, protectable" service mark and (2) Defendants' use of
4  his service mark is "likely to cause confusion."  Applied Info.
5  Sciences Corp. v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir.
6  2007)(quotations and citations omitted).[1]

### A. Validity of Plaintiff's Service Mark

Defendants argue Plaintiff's service mark is invalid and therefore unprotectable since it is "too descriptive" and "too common to serve as a mark."  Defendants also argue Plaintiff's mark is invalid because it is not used in connection with an interstate business as required by the Lanham Act.  Plaintiff counters that the federal registration of his mark creates a strong presumption that his service mark is valid and protectable.  Plaintiff further argues his business is engaged "in commerce" as defined in the Lanham Act.

Only trademarks and service marks that are "distinctive" may be registered and protected under the Lanham Act.  See 15 U.S.C. § 1127.  In general, marks are classified by the following five categories that fall along a spectrum of distinctiveness: fanciful, arbitrary, suggestive, descriptive and generic.  See Surfvivor, 406 F.3d at 631-32 (describing the five categories of marks).  "Suggestive, arbitrary [and] fanciful marks are inherently distinctive, but a mark that is generic or one that is descriptive and lacks a secondary meaning, is not distinctive and does not receive trademark protection."  Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1197

---

[1] "Service marks and trademarks are governed by identical standards" under the Lanham Act.  Chance v. Pac-Tel Telerac Inc., 242 F.3d 1151, 1156 (9th Cir. 2001).

7

1  (9th Cir. 2009)(quotations and citations omitted).  Where along the
2  spectrum of distinctiveness a mark is categorized is a question of
3  fact.  See id. at 1195-96 (clarifying that the district court's
4  classification of a mark is a factual determination to which clear
5  error review is applied).  The parties dispute whether Plaintiff's
6  service mark is "suggestive" or "descriptive."[2]  If Plaintiff's mark
7  is classified as "descriptive," it is not entitled to protection under
8  the Lanham Act unless it has a secondary meaning.

9       "Deciding whether a mark is distinctive or merely
10 descriptive is far from an exact science and is a tricky business at
11 best."  Lahoti, 586 F.3d at 1197.  However, "[r]egistration of a
12 [service] mark on the Principal Register in the Patent and Trademark
13 Office constitutes prima facie evidence of the validity of the
14 registered mark . . . ."  Applied Information Sciences Corp., 511 F.3d
15 at 970; see also 15 U.S.C. § 1115 (federal registration of mark is
16 "prima facie evidence of the validity of the registered mark").  That
17 is, federal registration of a particular mark supports the conclusion
18 that a mark is distinctive "because the PTO should not otherwise give
19 it protection."  Lahoti, 586 F.3d at 1999 (also stating that
20 "[r]egistration alone may be sufficient in an appropriate case to
21 satisfy a determination of distinctiveness"); see also Quicksilver,
22 Inc. v. Kymsta Corp., 466 F.3d 749, 760 (federal registration creates
23 a presumption that mark is "inherently distinctive").  Since it is
24 undisputed that Plaintiff's service mark was registered on the PTO's
25 principal register on July 21, 2009, Plaintiff has made a "prima

---

28  [2]  Defendants make a conclusory statement that Plaintiff's trademark is generic but have advanced no arguments in support of this conclusion.

8

1  facie" showing of validity.  See id.  The burden of production,
2  therefore, shifts to Defendants to demonstrate by a preponderance of
3  the evidence that Plaintiff's mark is in fact invalid.  Tie Tech, Inc.
4  v. Kinedyne Corp., 296 F.3d 778, 783 (9th Cir. 2002); Vuitton Et Fils
5  S.A. v. J. Young Enters., Inc., 644 F.2d 769, 776 (9th Cir. 1981)(the
6  presumption of validity need not be rebutted by "clear and convincing
7  evidence" but only by a "preponderance of the evidence").
8       Defendants raise two arguments in an apparent attempt to
9  satisfy their burden of demonstrating the invalidity of Plaintiff's
10 mark.  First, Defendants argue third-party use of the phrase "Mix It
11 Up" renders Plaintiff's service mark descriptive, and therefore,
12 invalid.  The presumption of validity created by a federal
13 registration "can be rebutted by contrary evidence" that the mark is
14 "descriptive."  J. Thomas McCarthy, McCarthy on Trademarks and Unfair
15 Competition, Section 11:43 (4th ed.); see also Lahoti, 586 F.3d at
16 1999-00 (discussing rebuttal of the presumption of distinctiveness by
17 evidence of third-party use and third-party registration).  "That is,
18 if others are in fact using the term [Mix It Up] to describe their
19 products [or services], an inference of descriptiveness can be drawn."
20 Lahoti, 586 F.3d at 1200 (quoting McCarthy Section 11:69); see also
21 Entrepreneur Media Inc. v. Smith, 279 F.3d 1135, 1143 (9th Cir.
22 2002)(stating that "[t]he needs of others in the marketplace to use
23 the term . . . to describe their goods or services . . . confirms that
24 [the] mark [at issue] is descriptive"); Classic Foods Intern. Corp. v.
25 Kettle Foods, Inc., No. SACV 04-725 CJC (Ex), 2006 WL 5187497, at *12
26 (C.D. Cal. Mar. 2, 2006)(noting extensive use of mark by third-parties
27 marketing similar products supports conclusion that mark, is at most,
28 descriptive).  However, only third-party use "of similar marks on

similar goods [or services] is relevant . . . ." Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1722, 396 F.3d 1396, 1373 (Fed. Cir. 2005).

To support their argument that Plaintiff's service mark is merely descriptive, Defendants provide what appears to be print out copies of websites employing the phrase "Mix It Up."[3] (See Kim Decl. Ex. J, L, M, N and O.) Plaintiff objects to the admissibility of Exhibits J, L, M, N and O, arguing that the declarant lacks personal knowledge, and alternatively, the exhibits constitute inadmissible hearsay. (Objections to Defs.' Evidence ¶ 1.) Defendants respond, arguing that the print outs are not hearsay because they are not statements. (Reply to Pl.'s Response ¶¶ 32-37.) Defendants do not address the issue of personal knowledge.

The website print outs at issue are attached to Nani Kim's declaration. (Ex. G.) In the first paragraph of her declaration, Kim states that she has personal knowledge of the contents of her declaration. (Kim Decl. ¶ 1.) However, Kim's declaration does not provide that she has personal knowledge of the website print outs that are attached to her declaration as exhibits. That is, she does not declare that she actually viewed the websites, when and how the pages were printed, or that the print outs accurately reflect the contents of the websites she viewed. While Plaintiff did not specifically raise the objection of authentication, personal knowledge is a necessary prerequisite. See Internet Specialties West, Inc. v. ISPWest, No. CV 05-3296 FMC AJWX, 2006 WL 4568796, at *2 (C.D. Cal.

---

[3] Defendants have not related how they obtained or created the purported website print outs that they submit as evidence of third-party use.

10

Sept. 19, 2006) (stating that "[t]o be authenticated, someone with [personal] knowledge of the accuracy of the contents of the internet printouts must testify."). "To authenticate printouts from a website, the proponent must present evidence from a witness with personal knowledge of the website at issue stating that the printout accurately reflects the contents of the website and the image of the page on the computer at which the printout was made." Toytrackerz LLC v. Koehler, No. 08-2297-GLR, 2009 WL 2591329, at *6 (D. Kan. Aug. 21, 2009). Since Kim's declaration does not demonstrate that she has personal knowledge of the website print outs, Plaintiff's objection to Exhibits J, L, M, N and O is sustained.

Plaintiff also objects to the admissibility of Mendi Parker's affidavit and the accompanying website print out (Ex. K), arguing Parker lacks personal knowledge under Federal Rule of Evidence 602. (Objections to Defs.' Evidence ¶ 2.) Defendants argue Parker's declaration "states facts based on asserted personal knowledge." (Reply to Pl.'s Response ¶ 34.)

Parker's affidavit, however, does not provide that she has personal knowledge of the contents of her affidavit. Rather, she merely states that the contents of her affidavit are "to the best of her knowledge and belief . . . true and correct." (Ex. K., Parker Decl. ¶ 3.) Defendants have not demonstrated that this is sufficient to satisfy Federal Rule of Evidence 602's requirement of personal knowledge. See Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1200 (10th Cir. 2006)(stating that "at the summary judgment stage, statements of mere belief in an affidavit must be disregarded" (quotations and citations omitted)). Therefore,

11

Plaintiff's objection to Parker's affidavit and the accompanying website print out is sustained.

Therefore, the admissible evidence that supports Defendants' argument of descriptiveness is a declaration from Tim Gerber, an employee of Flavor Burst, Inc., in which he declares, "Flavor Burst developed materials for the use of its Nice Ice equipment for frozen cocktails, using the phrase "Mix It Up."  (Ex. P, Gerber Decl., ¶ 3.)[4] This evidence is clearly insufficient to overcome the presumption of validity that attaches to Plaintiff's service mark.[5]

Even if Defendants' excluded exhibits were considered, Defendants would still fail to satisfy their burden of demonstrating invalidity.  "It is now well recognized that [a]nyone can put anything on the internet.  No website is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation[.]  [H]ackers can adulterate the content of any website from any location at any time. For these reasons, any evidence procured off the Internet is adequate

---

[4] Plaintiff also objects to Gerber's declaration, arguing that he lacks personal knowledge and that his declaration impermissibly relies on documents not provided under Federal Rule of Evidence 1002. (Objections to Defs.' Evidence ¶ 3.)  Defendants argue Gerber has personal knowledge of the facts declared.
Plaintiff's objections are overruled. Gerber's declaration states that it is made upon personal knowledge.  Further, Gerber's declaration is not offering the contents of any documents and therefore Federal Rule of Evidence 1002 is not implicated.

[5] Defendants also provided a print out of the first page of the search results produced when the terms "Mix It Up" and "Mix It Up Frozen Beverage" are entered into the Google search engine. (Kim Decl., Exs. H, I.). However, only evidence of third-party use on similar goods and services is relevant. See Eclipse Ass'n, Ltd. v. Data General Corp., 894 F.2d 1114, 1119 (9th Cir, 1990)(stating that "[e]vidence of other unrelated potential infringers is irrelevant to claims of trademark infringement . . . ."). A list of search results does not demonstrate such third-party use, and is therefore, irrelevant.

for almost nothing." Internet Specialties West, 2006 WL 4568796, at *1 (quotations and citations omitted). Further, in proving descriptiveness, third-party use is "only relevant if there are similar marks on similar goods. Print outs of websites are not likely to demonstrate that the goods offered are similar, and to the extent that they do, they are hearsay." Id. at *2.

Defendants also seek to overcome the presumption of validity by arguing Plaintiff's service mark is not used in connection with interstate business and therefore fails to satisfy the Lanham Act's "use in commerce" requirement. Plaintiff disputes this contention.

Under the Lanham Act, for a service mark to be valid, the mark must be used "in commerce." See 15 U.S.C. § 1127. Section 1127 provides that a service mark "shall be deemed to be in use in commerce . . . when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State . . . ." Id. "Commerce" is defined as "all commerce which may lawfully be regulated by Congress." Id. "It is well settled that so defined 'commerce' includes intrastate commerce which affects interstate commerce." Thompson Tank & Mfg. Co., Inc. v. Thompson, 693 F.2d 991, 993 (9th Cir. 1982). Further, "[a]dvertising that affects interstate commerce and solicitation of sales across state lines . . . is therefore commerce within the meaning of the Lanham Act." Health Net v. U.S.A. Healthnet, Inc., No. CV 92-3925 KN, 1993 WL 209558, at *2 (C.D. Cal. May 12, 1993)(quoting Shatel Corp. v. Mao Ta Lumber and Yacht Corp., 697 F.2d 1352, 1356 (11th Cir. 1983)).

Defendants rely upon a copy of the "Delivery Area" subpage of Plaintiff's website as support for their argument that Plaintiff

1  uses his service mark in connection with an only intrastate business.
2  The webpage states that Plaintiff provides his rental services in the
3  greater Sacramento area.  Plaintiff, however, declares that "his
4  customers make reservations for renting machines via telephone and
5  [through his] website" and that he sells "MIX IT UP! branded beverages
6  nationwide."  (Cook Decl. ¶ 3.)  Defendants' evidence is insufficient
7  to demonstrate that Plaintiff's service mark is not used in interstate
8  commerce.  Therefore, Defendants have not rebutted the presumption of
9  validity that attaches to Plaintiff's registered service mark.
10 Accordingly, Defendants' summary judgment motion on the issue of the
11 validity of Plaintiff's service mark is denied.

### B.  Liklihood of Confusion

13         Defendants also argue they are entitled to summary judgment
14 on Plaintiff's claim of trademark infringement since, as a matter of
15 law, there is no liklihood of confusion caused by Defendants'
16 allegedly infringing use of Plaintiff's service mark.

17         "Liklihood of confusion exists when consumers viewing the
18 mark would probably assume that the goods [or services] it represents
19 are associated with the source of a different product [or service]
20 identified by a similar mark."  KP Permanent Make-UP, 408 F.3d at 608.
21 "To analyze liklihood of confusion, . . . the following eight factors,
22 generally referred to as the Sleekcraft factors, [are considered]: (1)
23 strength of the mark(s); (2) relatedness of the goods; (3) similarity
24 of the marks; (4) evidence of actual confusion; (5) marketing
25 channels; (6) degree of consumer care; (7) the defendants' intent; and
26 (8) liklihood of expansion."  Surfvivor, 406 F.3d at 631.  "The test
27 is a fluid one and the plaintiff need not satisfy every factor,

1  provided that strong showings are made with respect to some of [the
2  factors.]" Id.
3  　　　　However, "[t]he ultimate question of liklihood of confusion
4  is predominantly factual in nature as is each factor within the
5  Sleekcraft likelihood of confusion test." Entrepreneur Media, Inc. v.
6  Smith, 279 F.3d 1135, 1140 (9th Cir. 2002)(quotations and citations
7  omitted).  Further, "determining whether a likelihood of confusion
8  exists at the summary judgment stage is generally disfavored because a
9  full record is usually required to fully assess the facts."  KP
10 Permanent Make-UP, 408 F.3d at 608.
11 　　　　Here, the factual record is sparse.  Neither Defendants nor
12 Plaintiff have submitted any evidence on some of the Sleekcraft
13 factors.  Further, the evidence provided on the other factors is
14 disputed, and is insufficient for Defendants to prevail on their
15 motion.  Defendants' mere argument that there is no liklihood of
16 confusion is insufficient to satisfy their burden on summary judgment.
17 Accordingly, Defendants' motion for summary judgment on the issue of
18 liklihood of confusion is denied.

### IV. CONCLUSION

20 　　　　For the stated reasons, Defendants' motion for partial
21 summary judgment is DENIED.
22 Dated:  January 27, 2010

　　　　　　　　　　　　　　　　　　　　　　／s／ Garland E. Burrell, Jr.
　　　　　　　　　　　　　　　　　　　　　　GARLAND E. BURRELL, JR.
　　　　　　　　　　　　　　　　　　　　　　United States District Judge